UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------x

STAR INSURANCE COMPANY,

               Plaintiff,        **<u>MEMORANDUM & ORDER</u>**
                                       <u>22-CV-7968 (EK)(TAM)</u>

       -against-

AT-SAF, INC., INDERPAL SINGH,
SIKANDER SINGH, SARBJIT SINGH,
TEJINDER ("MIKE") SINGH, HARVINDER
PAL SINGH, STATE FARM FIRE & CASUALTY
COMPANY as subrogee of BACI'S PET
PALACE INC., WESCO INSURANCE COMPANY
as subrogee of CROSSBAY ASSOCIATES
LLC, CROSSBAY ASSOCIATES LLC, BACI'S
PET PALACE INC d/b/a ANIMAL PANTRY,
NORGUARD INSURANCE COMPANY as
subrogee of CROSSBAY EXPRESS
LAUNDROMAT, INC. AND AREPALICIOUS,

               Defendants.

------------------------------------x
ERIC KOMITEE, United States District Judge:

       In this action, Star Insurance Company seeks a

declaratory judgment that it has no duty to defend or indemnify

certain defendants in a number of underlying state negligence

suits.  The defendants in those lawsuits are insured by United

Specialty Insurance Company (USIC).  Star Insurance is USIC's

*reinsurer*, and it is not a defendant in the underlying state

actions.

       The defendants in this case believe that USIC is the

real plaintiff in interest here.  And they think they know why

it did not bring this action: because its presence as a plaintiff would have destroyed diversity and thereby precluded federal jurisdiction.

Defendant Wesco Insurance Company, joined by a number of other defendants, filed a motion to dismiss this action pursuant to Rule 12(b)(6).  Wesco asserts that as a reinsurer, Star lacks "contractual standing" to sue under (or seek declaratory relief concerning) the relevant policies.

For the reasons set forth below, the defendants' motion is granted.

## I.   Background

Unless otherwise indicated, the following facts are taken from Star Insurance Company's amended complaint and the documents referenced therein and are assumed to be true.

## A.   The Underlying Dispute

In November 2018, a building on Crossbay Boulevard in Queens (the "Crossbay Building") partially collapsed, causing substantial losses to the building's owners and its tenants. Am. Compl. ¶ 20, ECF No. 84.  The Crossbay Building is owned by Crossbay Associates LLC.  *Id.*

In the several state court actions that followed, various plaintiffs blamed the collapse on Inderpal[1] Singh, who

---

[1] Because a number of the defendants share a surname, this order will refer to them at times by first name.  Inderpal Singh is listed in the

owned a neighboring property that the complaint refers to as the Albert Road Property. *Id.* Inderpal Singh purchased that undeveloped property with an eye towards constructing a two-story building on it. *Id.* Singh has his own construction firm — At-Saf, Inc., which was the general contractor for the Albert Road construction project. *Id.* He also engaged two engineering firms for the project. *Id.* At-Saf is insured by USIC under a general liability policy and an excess policy (the "USIC Policies"). *Id.* ¶¶ 33-38.

During "early stage excavation and earth work" at the Albert Road Property, a section of the Crossbay Building "collapsed and fell into the construction site at the Albert Road Property." *Id.* ¶ 20. This caused extensive damage to the Crossbay building. The City's Department of Buildings issued a stop-work order shutting down construction on the Albert Road project. *Id.* Five separate state-court cases followed.[2] In those cases, the plaintiffs (which include Crossbay Associates, various tenants of the Crossbay Building, and the insurers of

complaint caption as Indperpal Singh, but in the body of the complaint, and elsewhere on the docket, as Inderpal. This order will refer to him as Inderpal.

[2] *See State Farm Fire & Casualty Co. a/s/o Baci's Pet Palace Inc. v. At-Saf Inc. & Inderpal Singh*, Index No. 715267/2019 (pending in Supreme Court, New York County); *Wesco Insurance Co. a/s/o Crossbay Associates LLC v. Inderpal Singh, et al.*, Index No. 701888/2020 (pending in Supreme Court, Queens County); *Crossbay Associates LLC v. Inderpal Singh, et al.*, Index No. 704260/2020 (same); *Baci's Pet Palace Inc. d/b/a Animal Pantry v. Inderpal Singh et al.*, Index No. 713529/2020 (same); *Norguard Insurance Company a/s/o Crossbay Express Laundromat, Inc. and Arepalicious, Inc. v. At-Saf & Inderpal Singh* (same).

these entities) allege that At-Saf and Inderpal were negligent
in designing and executing the Albert Road project.  *Id.*
Certain of these actions also name Sikander Singh, Sarbjit
Singh, Tejinder Singh, and Harvinder Pal Singh as co-owners of
the Albert Road Property.  *Id* ¶ 22.

## B.    The Reinsurance Arrangement

After executing the USIC Policies, but before the
Crossbay Building collapsed, USIC sought reinsurance from Star
Insurance Company ("Star").  Star initially agreed to reinsure
the USIC Policies alongside a number of other reinsurers;
together they executed a Quota Share Reinsurance Agreement
("QSA"), and certain related agreements, with USIC.  *Id.* ¶¶ 42-
43.[3]  Years later, however, Star agreed to take the entirety of
the reinsurance obligation on itself.  *See id.* ¶ 44; *see also*
Wesco Mem., Ex. D, General Agency Novation Agreement ("GANA") 1,
ECF No. 95-2.  Star thus became fully "responsible for paying
out any obligations owed under the [USIC] Policies to At-Saf and
other policyholders."  Am. Compl. ¶ 44.

Pursuant to these agreements, Star is currently
defending Inderpal, At-Saf and certain other state-court
defendants under the USIC Policies.  *Id.* ¶¶ 18, 21, 24, 27, 30.

---

[3] Although Star has not attached these contracts to its amended
complaint, it refers to each in some detail.  Am. Compl. ¶¶ 33-38, 42-45; *see
Roth v. Jennings*, 489 F.3d 499, 509 (2d Cir. 2007) ("Documents that are . . .
incorporated in [the complaint] by reference are deemed part of the pleading
and may be considered.").

### C.   Procedural History

This action was initially prosecuted by USIC, not Star.  In June 2022, USIC sued At-Saf and the Singhs in this district, invoking the Court's diversity jurisdiction.  USIC sought the same remedy that Star now seeks: a declaratory judgment that it has no duty to defend or indemnify At-Saf and the individual defendants in the state-court actions. Complaint, *United Specialty Ins. Co. v. At-Saf, Inc., et al.*, No. 22-CV-3786 (E.D.N.Y. June 28, 2022), ECF No. 1.

USIC did not name Crossbay's insurer, Wesco Insurance Company ("Wesco"), as a defendant — notwithstanding the fact that Wesco is a plaintiff in one of the state actions, and USIC's requested declaratory judgment would likely impact Wesco's ability to recover.  *Id.* ¶¶ 8-13.  Wesco then apparently informed USIC that it would move to intervene.  Mem. of L. in Supp. of Def. Wesco Ins. Co.'s Mot. to Dismiss ("Wesco Mem.") at 2, ECF No. 96.  As USIC and Wesco are both Delaware corporations, Wesco's intervention would have destroyed diversity.  *Id.*

Rather than adding Wesco, USIC voluntarily dismissed its case.  Notice of Voluntary Dismissal, *United Specialty*, No. 22-CV-3786 (E.D.N.Y. Jan. 3, 2023), ECF No. 9.  Shortly thereafter, Star filed the present action for the same relief. Compl., ECF 1.  As the caption indicates, Star *did* name Wesco as

a defendant.  That addition did not destroy diversity, because Star is incorporated and headquartered in Michigan, not Delaware.  Am. Compl. ¶ 1.[4]

In January 2024, Wesco filed this motion to dismiss. Wesco Mem. 1-3.  Several defendants join Wesco's motion.[5]

## II.  Legal Standard

To overcome a motion to dismiss under Rule 12(b)(6), a complaint must plead facts sufficient "to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).[6]  In reviewing such a motion, the court must accept all factual allegations in the complaint as true and draw all reasonable inferences in the plaintiff's favor.  *See Lundy v. Cath. Health Sys. of Long Island Inc.*, 711 F.3d 106, 113 (2d Cir. 2013).

## III. Discussion

The declaratory relief that Star seeks is premised on various exclusions and limitations in the USIC Policies.  Am.

---

[4] The parties in the current action include: Star Insurance as plaintiff, and Inderpal Singh, Sikander Singh, Tejinder Singh, Sarbjit Singh, Harvinder Pal Singh, State Farm Fire & Casualty Company, Baci's Pet Palace Inc., Wesco, Crossbay Associates LLC, Norguard Insurance Company, and At-Saf, Inc. as defendants.  State Farm also asserted crossclaims against all other defendants.

[5] Crossbay Associates, Baci's Pet Palace, Inderpal Singh, Tejinder Singh, and State Farm Fire & Casualty joined Wesco's 12(b)(6) motion. Norguard Insurance, At-Saf, Sarbjit Singh, Harvinder Pal Singh and Sikander Singh have yet to answer the complaint.

[6] Unless otherwise noted, when quoting judicial decisions this order accepts all alterations and omits all citations, footnotes, and internal quotation marks.

Compl. ¶¶ 49-109.  Because Star is not itself a party to the
USIC Policies, Wesco moves to dismiss this action for lack of
contractual standing.  Wesco Mem. 8.  Wesco argues that Star
lacks privity with the defendants and thus is not the real party
in interest.  *Id.*

Contractual standing is an inquiry into "whether a
party has the right to enforce a contract." *SM Kids, LLC v.
Google LLC*, 963 F.3d 206, 211 (2d Cir. 2020).  As such,
"[c]ontractual standing is distinct from Article III standing
and does not implicate subject-matter jurisdiction." *Id.*
Instead, "contractual standing speaks to a party's right to
relief" under a contract and is thus considered under Rule
12(b)(6). *See id.* at 211-12.

A plaintiff seeking remedies under a contract must be
"in privity of contract with the defendant or [] a third-party
beneficiary of the contract." *Hillside Metro Assocs., LLC v.
JPMorgan Chase Bank, N.A.*, 747 F.3d 44, 49 (2d Cir. 2014).  For
the reasons that follow, Star has failed to plead privity or
third-party beneficiary status.

## A.   Star Lacks Contractual Standing

New York law is clear that non-parties to insurance
policies lack standing to sue under those policies. *Brettler
Tr. of Zupnick Fam. Tr. 2008 A v. Allianz Life Ins. Co. of N.*

7

*Am.*, 57 F.4th 57, 61–62 (2d Cir. 2022).[7]  This includes suits for declaratory judgments regarding the policies' terms.  *Id.*  New York courts have specifically held that "no privity exists between the reinsurer and the original insured." *Reliance Ins. Co. v. Aerodyne Engineers Inc.*, 204 A.D.2d 944, 944 (3d Dep't 1994).

This is true because reinsurance agreements, generally speaking, are "contracts of indemnification in which a ceding insurer is indemnified by a reinsurer against loss on its policies." *Jurupa Valley Spectrum, LLC v. National Indem. Co.*, No. 06-CV-4023, 2007 WL 1862162, at *6 (S.D.N.Y. June 29, 2007), *aff'd*, 555 F.3d 87 (2d Cir. 2009) (citing *Cont'l Cas. Co. v. Stronghold Ins. Co., Ltd.*, 77 F.3d 16, 19 (2d Cir. 1996)). "Since the relationship" between a reinsurer and the first-line insurer "is one of indemnification, the reinsurer has no privity with, and is generally not liable to, the original purchaser of the underlying policy." *Id.* at *6 (citing *Travelers Indem. Co. v. Scor Reinsurance Co.*, 62 F.3d 74, 76 (2d Cir. 1995)).

The Appellate Division's brief order in *Reliance Insurance* is instructive.  That case arose out of an oil spill

---

[7] *Certified question accepted sub nom. Brettler v. Allianz Life Ins. Co. of N. Am.*, 39 N.Y.3d 978 (2023), and *certified question answered sub nom. Brettler v. Allianz Life Ins. Co. of N. Am.*, 40 N.Y.3d 450 (2023), *opinion after certified question answered sub nom. Brettler Tr. of Zupnick Fam. Tr. 2008 A v. Allianz Life Ins. Co. of N. Am.*, 98 F.4th 83 (2d Cir. 2024) (holding that an incomplete assignment of rights under an insurance contract did not confer contractual standing to sue under that contract).

that occurred when an oil company — "Big S. Oil" — delivered its product to a customer. *Reliance Ins.*, 204 A.D.2d at 944. Big S. was insured by a non-party, Planet Insurance, and Reliance had agreed to reinsure Planet. *Id.* After Reliance paid a damages claim for the spill, it sued Aerodyne Engineers, alleging that Aerodyne had negligently installed the oil tanks at issue. *Id.*

In the state Supreme Court, Reliance asserted the right to sue Aerodyne as Big S.'s "subrogee." *Id.* The lower court denied Aerodyne's motion to dismiss Reliance's complaint, but the Appellate Division reversed. *Id.* at 945. The appellate court held that a "contract of reinsurance is one of indemnity to the entity reinsured. It is distinct and separate from the original insurance contract." *Id.* at 944. Therefore, the reinsurer is not in privity with the underlying insured. Instead, the "reinsured" party — i.e. the original insurer — "remains *solely* responsible under the original insurance contract." *Id.* (emphasis added).

In the end, the Appellate Division opined that the "fact that a reinsurer pays a claim on behalf of the insured" — as Star has paid defense expenses on behalf of the insured here — "does not alter the relationships between the parties." *Id.* at 944-45. While certain aspects of *Reliance Insurance* have since been questioned, the recognition that no privity exists

9

between reinsurer and underlying insured has not.[8] Accordingly, Star cannot seek a declaration as to the obligations (or non-obligations) under a contract to which it is a stranger.

Similarly, the court ruled in *Jurupa Valley* that the holder of two surety bonds issued by Frontier Insurance could not sue Frontier's reinsurer, NICO, because "the plaintiff lacks privity with NICO under the surety bonds." *Jurupa Valley*, 2007 WL 1862162 at *10. (The plaintiff could not sue Frontier because Frontier was in liquidation proceedings before the New York Insurance Department and "all suits" against it had been enjoined. *Id.* at *1.) Thus, absent the applicability of certain exceptions (such as a "cut-through clause," discussed below), Jurupa had no recourse against NICO.[9]

Finally, Star has not established (or even meaningfully endeavored to establish) its status as a third-party beneficiary of the USIC Policies. Parties asserting

---

[8] Earlier this year, the First Department declined to follow *Reliance Insurance*'s conclusion that reinsurers may not sue to recover their payments from the tortfeasors who caused the underlying loss. *See Century Prop. And Casualty v. McManus & Richter*, 205 N.Y.S.3d 57, 65 (1st Dep't 2024). This outcome flowed from the principle that equitable subrogation "is a doctrine founded in equity and not in contract." *Id.* Notwithstanding that decision, *Century* did not disturb the well-established (indeed, almost self-evident) rule that reinsurers are not in privity with the underlying insured. *Id.* Here, Star is not asking for equitable subrogation or any other equitable relief — they are asking for a declaration as to the operation of a particular contract.

[9] As is apparent, the privity analysis in *Jurupa Valley* ran in the opposite direction, asking whether the underlying insured had a cause of action against the reinsurer. Here, we consider whether the reinsurer can pursue remedies (or clarity) under a contract with the underlying insured. But cases like *Jurupa Valley* and *Reliance Insurance* suggest no reason to think this analysis would be asymmetrical.

rights as third-party beneficiaries must demonstrate, among
other things, that the contract was intended for their benefit.
*Mendel v. Henry Phipps Plaza W., Inc.*, 6 N.Y.3d 783, 786 (2006).
That intent must be clear from the language in the contract
itself.  *Air Atlanta Aero Eng'g Ltd. v. SP Aircraft Owner I,
LLC,* 637 F. Supp. 2d 185, 191 (S.D.N.Y. 2009); *LaSalle Nat'l
Bank v. Ernst & Young LLP,* 729 N.Y.S.2d 671, 676 (1st Dep't
2001).

          "Under New York law, the meaning of a contract that is
unambiguous is a question of law for the court to decide."
*Revson v. Cinque & Cinque, P.C.*, 221 F.3d 59, 66 (2d Cir. 2000).
And the USIC Policies are unambiguous on this question: nothing
in them references Star or indicates the parties' intent to
benefit Star in any way.

          As *Jurupa Valley* noted, there are exceptions to the
rule precluding privity between reinsurers and insureds.  As set
out below, none of these exceptions applies here.

     1. The QSA Contains No "Cut-Through" Provision

          First, privity may exist "if the reinsurance agreement
contains a so-called 'cut through' provision granting policy
holders a direct right of action against reinsurers." *Jurupa
Valley*, 555 F.3d at 89.  The reinsurance agreement in this case
includes no such provision.  On the contrary, as in *Jurupa
Valley* (in which the Second Circuit affirmed dismissal), the

contract "explicitly provides that no one other than the reinsured shall have any rights or remedies against the reinsurer." *Id.* Section 2.05 of the QSA — the reinsurance agreement between Star and USIC — reads: "Nothing herein shall in any manner create any obligations, establish any rights or create any direct right of action against the Reinsurer in favor of any third party, or other person not party to this Agreement; or create any privity of contract between the policyholder and the Reinsurer." Wesco Mem., Ex. C ("QSA") ¶ 2.05, ECF No. 95-1.

   2. The QSA is Not an Assumption Contract, and USIC did
      Not Assign its Entire Interest to Star

        The reinsurance agreements at issue here were not assumption contracts, and Star is not USIC's assignee. "In the case of assumption reinsurance, the reinsurer steps into the shoes of the [original insurer] with respect to the reinsured policy, assuming *all* its liabilities and its responsibility to maintain required reserves against potential claims." *Colonial Am. Life Ins. Co. v. Comm'r of Internal Revenue*, 491 U.S. 244, 247 (1989) (emphasis added). Similarly, "[a]n assignment at law contemplates a completed transfer of the entire interest of the assignor in the particular subject of assignment, whereby the assignor is divested of all control over the thing assigned." *Miller v. Wells Fargo Bank Int'l Corp.*, 540 F.2d 548, 558 (2d Cir. 1976). However, no assumption or assignment occurs

"without language in a reinsurance agreement indicating that the reinsurer intends to be directly liable to the insured." *OneBeacon Am. Ins. Co. v. Colgate-Palmolive Co.*, 123 A.D.3d 222, 227-28 (1st Dep't 2014).

Here, as in *OneBeacon*, "nothing in the Reinsurance Agreement suggests an assignment or assumption"; instead, USIC "remains fully and solely responsible for the performance of its obligations under the [applicable] policies even if [the reinsurer is] performing those obligations on its behalf." *Id.* at 227. The QSA provides that:

> [I]n the event of the insolvency of [USIC], the reinsurance under this Agreement shall be payable directly by [Star] to [USIC] . . ., except . . . where [Star] with the consent of the direct Insured or Insureds has assumed such policy obligations of [USIC] as direct obligations of [Star] to the payees under such policies and in substitution for the obligation of [USIC] to such payees.

QSA ¶ 13.04.[10]  This provision makes clear that no assumption had yet occurred.

Likewise, USIC did not delegate all its liabilities to Star, nor divest itself of all control over the policies. The QSA empowered Star to "investigate any claim arising under any of the Policies, to pay, adjust, settle, resist or compromise any such claim, *unless* [USIC] specifically directs to the

---

[10] Star filed the QSA with certain passages, including this provision, redacted.  For the reasons set out in Section III.C below, the Court orders the language included in this opinion to be unsealed.

contrary."  QSA ¶ 5.03 (emphasis added).  USIC also retained the power to cancel the USIC Policies, subject to USIC's underwriting rules, "for any reason [USIC] deems necessary." QSA ¶ 20.12.  And through the General Agency Agreement ("GAA"), executed contemporaneously with the QSA, USIC authorized the General Agent (one of the other reinsurers under the QSA) to act on its behalf in handling claims, but "retain[ed] final authority to determine any disputes relating to claims settlement and setting of loss reserves."  Wesco Mem., Ex. E ("GAA") ¶ 1.03, ECF 95-3.  Thus, Star cannot overcome the general rule of privity through this exception.

### 3. The GANA Did Not Put Star in Privity with the Defendants

In its attempt to establish privity, Star relies primarily on the General Agency Novation Agreement (the "GANA") that Star, USIC, and the other reinsurer-parties to the QSA executed years after the QSA.  Through the GANA, Star assumed the liabilities of the five other reinsurers, and thus took on 100% of the reinsurance obligation.  That agreement, Star points out, superseded the QSA.  Pl.'s Mem. in Opp. to the Mot. to Dismiss (Pl.'s Mem.") at 11-13, ECF 97.  Per page one of the GANA, Star "accept[ed] and assume[d] all rights and obligations of the Reinsurer[s] under the Quota Share Agreements and [became] the legal substitute of the Reinsurer[s] under the

Quota Share Agreements so as to effectuate a novation."  GANA at
1.

Star reads this provision to mean that Star assumed
all of *USIC's* liabilities under the USIC Policies and thus
"step[ped] into United Specialty's shoes."  Pl.'s Mem. 13.  This
misconstrues the language and function of the GANA.  The term
"Reinsurers" in the provision quoted above refers to the five
other reinsurers under the QSA, not to USIC.  GANA at 1.  The
GANA thus served only to consolidate reinsurance
responsibilities in the QSA in Star.  *Id.*  Through the GANA,
Star's fellow reinsurers — not USIC, which was the *reinsured* —
"assign[ed] all of [their] rights and obligations under the
Quota Share Agreements."  *Id.*  This horizontal assignment among
reinsurers did not constitute an assignment between USIC and
Star.

Given that, Star is not in privity with the underlying
insured, and cannot pursue its claims.

**B.   Rule 17(a)(3) Does Not Require Additional Notice**

Before dismissing, we pause to consider Federal Rule
of Civil Procedure 17 in light of the dispute over which insurer
is "the real party in interest."  *See* Pl.'s Mem. at 19 (arguing
that "Star is the real party in interest in this action").  Rule
17 requires that an action "be prosecuted in the name of the
real party in interest" — in this case USIC, given the preceding

analysis.  The rule goes on to state: "The court may not dismiss an action for failure to prosecute in the name of the real party in interest until, after an objection, a reasonable time has been allowed for the real party in interest to ratify, join, or be substituted into the action."  Fed. R. Civ. P. 17(a)(3).

Star has not requested time to allow USIC's substitution, notwithstanding that the motion to dismiss has been pending for a substantial period.  There would be little point in doing so: as noted above, the substitution or joinder of USIC as a plaintiff would destroy diversity.  Indeed, USIC appears to have dismissed its own action for precisely that reason.  The Second Circuit has held that it is proper to deny amendment under Rule 17 when such amendment would destroy diversity, because "Rule 17(a) does not extend or limit the subject matter jurisdiction of a federal court."  *Cortlandt St. Recovery Corp. v. Hellas Telecommunications, S.a.r.l*, 790 F.3d 411, 424 (2d Cir. 2015).

In *Cortlandt*, the *named* plaintiff lacked Article III standing, rather than contractual standing.  But Cortlandt's holding applies to the instant case as well, given that the joinder or substitution of USIC would destroy diversity jurisdiction.  *Id.* ("If joinder or substitution of, or ratification by, a real party in interest would destroy the court's jurisdiction, the action must be dismissed.") (quoting 4

16

Moore's Federal Practice 3D § 17.12(1)(c)).  Ratification[11] would
not help, either, as *Cortlandt* suggests: diversity would still
be measured by reference to the citizenship of USIC, as the real
party in interest.  "The real party in interest is the party
with the legal title to the claim asserted and is the party with
the stake in the controversy that is being used to invoke the
court's jurisdiction."  *Fund Liquidation Holdings LLC v. Bank of
Am. Corp.*, 991 F.3d 370, 389 (2d Cir. 2021); *see also BlackRock
Allocation Target Shares v. Wells Fargo Bank, Nat'l Ass'n,* No.
14-CV-10067 (KPF), 2017 WL 3610511, at *17-*19 (S.D.N.Y. Aug.
21, 2017) ("The Court found that Rule 17(a) ratification would
be futile, because it would only destroy diversity jurisdiction
in attempting to remedy standing.").

        The Second Circuit has held in other contexts, as
well, that the curative options in Rule 17(a)(3) may not be used
to plead artfully around a legal restriction.  For example, in
*Federal Treasury Enterprise Sojuzplodoimport v. SPI Spirits
Ltd.*, the court held that a plaintiff could not bypass a
*statutory* standing requirement, because "[t]o enlarge standing
in this way would extend the entitlement to sue to a new party
that is otherwise unauthorized under the statute."  726 F.3d 62,

---

[11] In this context, "[t]o ratify a suit, the real party in interest must
(1) authorize continuation of the action and (2) agree to be bound by its
result." *Fed. Treasury Enter. Sojuzplodoimport v. SPI Spirits Ltd.*, 726 F.3d
62, 83 (2d Cir. 2013).

83 (2d Cir. 2013); *see also Del Re v. Prudential Lines, Inc.*, 669 F.2d 93, 94 (2d Cir. 1982) (holding that "Rule 17(a) in no way permits the circumvention" of a statutory period limiting a party's right to sue); *Alix v. McKinsey & Co.*, No. 18-CV-4141, 2024 WL 3293621, at *10 (S.D.N.Y. July 3, 2024) ("Allowing [the named plaintiff] to obtain a new, broader assignment or allowing him to do the functional equivalent through ratification . . . would not be consistent with Rule 17(a)(3).").

Because USIC's joinder, substitution, or ratification would undermine the Court's jurisdiction, no new notice period is required.

## C.   Sealing and Redaction

The Court notes that some of the contract language on which this case turns was initially filed in redacted form. *See, e.g.*, Section III.A.2, above (quoting QSA ¶ 13.04).  That filing was authorized by the Court's order of January 11, 2024, which was entered in response to Star's representation that the "subject matter of these documents [including the QSA] is not at issue in this Action.  All of the proposed redactions in the Reinsurance Agreements have absolutely nothing to do with the issue of Star's standing and do not otherwise impact Wesco's ability to file its proposed motion challenging standing."  Mem. of L. in Supp. of Star's Mot. To Seal at 1, ECF No. 75.  Star

did not articulate any concrete competitive harm that might flow from the public disclosure of this language.

Now that this language has emerged as salient to this decision, the Court must revisit that sealing order.  Second Circuit cases establish a "strong presumption" that judicial documents be "subject to public scrutiny."  *Lugosch v. Pyramid Co. of Onondaga*, 435 F.3d 110, 121 (2d Cir. 2006).  That presumption is "especially" strong where "judicial *decisions*" are concerned.  *In re Demetriades*, 58 F.4th 37, 45-46 (2d Cir. 2023).  Litigants know that the balance of interests on sealing and redaction can shift as a case runs its course.  *See generally Lugosch*, 435 F.3d at 126 ("[I]t is difficult to see how the defendants can reasonably argue that they produced documents in reliance on the fact that the documents would always be kept secret.").  Now that the contract language quoted in this opinion has taken center stage, the Court must (and hereby does) unseal it.

### IV.   Conclusion

For the foregoing reasons, the defendant's motion to dismiss is granted.  State Farm Fire & Casualty Company's cross-claims are dismissed as moot.  The Clerk of Court is respectfully directed to mark this action as closed.

```
                                     /s/ Eric Komitee
                              ERIC KOMITEE
                              United States District Judge


Dated:     September 27, 2024
           Brooklyn, New York
```